**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-20042.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,

v.

HEARST CORPORATION, Doing Business as The Houston Chronicle
Publishing Company, Defendant-Appellant.

Jan. 22, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before REYNALDO G. GARZA, JOLLY and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from an administrative subpoena
enforcement proceeding. The Hearst Corporation, Houston Chronicle
Division ("Hearst"), challenges the authority of the Equal
Employment Opportunity Commission ("EEOC") to enforce two
administrative subpoenas because the charging parties have
commenced litigation of the underlying claims. The EEOC
essentially maintains that once a valid charge has been filed, its
authority to investigate the employer continues indefinitely, and
never formally terminates. Having considered the arguments of the
parties, and the structure and purpose of the investigative
authority created by Title VII, we conclude that the EEOC may not
continue an administrative investigation based upon an individual's
charge once the charging party has been issued a right to sue
letter and has initiated litigation based upon that charge.

1

I

On December 13, 1994, Shelley Lamb and Joyce Waddell filed separate charges with the EEOC claiming that since August 1994, they had been subjected to continuing sexual harassment by John Laird, a Vice-President of Sales and Marketing for the Houston Chronicle, a newspaper division of the Hearst Corporation.[1] Lamb and Waddell provided the EEOC with affidavits that set forth the initial incidents of harassment, which allegedly occurred during a company meeting in Galveston, Texas, and subsequent incidents at the Chronicle's offices and in other locations. The affidavits also identified individuals who had told Lamb and Waddell about Laird's alleged harassment of other women, or about the Chronicle's treatment of Lamb's and Waddell's claims. Waddell's affidavit stated that a personnel department employee informed her that Anita Sparks, the Display Advertising Manager, had also once complained about Laird.

Based upon these affidavits, on February 23, 1995, the EEOC sent Hearst a written request seeking the personnel files of Lamb, Waddell and Laird, copies of any internal investigation documents, a list of employees in the Advertising Department, and permission to conduct an on-site investigation and to review certain other records. On March 21, Hearst provided the three personnel files, but refused all other requests, asserting that no additional information was relevant to Lamb's and Waddell's specific charges.

---

[1]The Hearst Corporation owns and operates the Houston Chronicle, a daily newspaper, as a separate division.

On April 14, the EEOC requested additional interviews, including an interview of Sparks. Following conversations with Hearst's attorney, the EEOC issued two subpoenas, dated April 24 and April 27, demanding the previously requested documents and information and the testimony of Anita Sparks. Hearst petitioned to revoke the subpoenas.

Sometime in July, Lamb and Waddell, who had already filed tort claims against Laird in Texas state court, formally requested right to sue letters from the EEOC. The EEOC issued right to sue letters to Lamb and Waddell on July 26, 225 days after the original charges had been filed. The issuance of these letters permitted Lamb and Waddell to amend their state court complaint to add sexual harassment claims under the Texas Commission on Human Rights Act, Tex.Lab.Code Ann. §§ 21.001-.306 (Vernon 1995), and to join the Hearst Corporation as a defendant. Hearst removed the case to federal court, but the case was remanded because Lamb and Waddell had not raised claims specifically under Title VII in their state court proceeding, but instead had raised claims under the Texas counterpart to Title VII.

On July 28, two days after issuing the right to sue letters, the EEOC denied Hearst's petition to revoke the subpoenas. On August 22, Hearst informed the EEOC that it would not comply with the subpoenas.

On November 20, the EEOC filed the present action in federal district court, seeking enforcement of its administrative subpoenas. Hearst argued in response that the EEOC could not

3

continue to investigate the charges, and, alternatively, that the EEOC was seeking information that was not relevant to the original charges. The district court disagreed and entered its order enforcing the subpoenas on January 9, 1996. This appeal followed.

II

Hearst challenges the EEOC's authority to enforce the subpoenas issued under Lamb's and Waddell's original charges on two alternate grounds.

First, Hearst argues that because Lamb and Waddell are now time-barred from filing suit under Title VII, the EEOC is also time-barred. In support of this contention, Hearst relies upon *EEOC v. C & D Sportswear,* 398 F.Supp. 300 (M.D.Ga.1975), which held that the EEOC could not maintain a Title VII action six years after a charge was filed and more than two years after a right to sue notice was issued.

The EEOC responds that no statute of limitations applies to the EEOC's right to bring a Title VII action where the charging party has not done so, citing *EEOC v. Occidental Life Ins. Co.,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). The EEOC also insists that this court need not reach the question whether the EEOC may file suit on the basis of Lamb's and Waddell's original charges. A subpoena enforcement proceeding, the EEOC argues, is not the proper time for considering the "merits" of any potential suit, and therefore this court need not address Hearst's contentions at this stage. As support, the EEOC cites *EEOC v. Children's Hosp. Medical Center,* 719 F.2d 1426 (9th Cir.1983) (en

4

banc) (holding that the question whether a prior consent decree would preclude later suit by the EEOC was irrelevant at subpoena enforcement stage), and *EEOC v. Roadway Express,* 750 F.2d 40 (6th Cir.1984) (finding that "merits" of case could not properly be considered at subpoena enforcement hearing).

Second, Hearst argues that the subpoenas may not be enforced because they seek information not relevant to the charges under which they were issued. Hearst argues that the EEOC is simply engaged in a "fishing expedition."

## III

Unlike some other agencies, the EEOC does not possess plenary authority to demand information that it considers relevant to its area of jurisdiction. The EEOC's authority to investigate in Title VII cases is triggered only by the filing of a formal charge, either by or on behalf of an aggrieved individual, or by a Commissioner. See 42 U.S.C. § 2000e-5(b) and § 2000e-6(e). The Supreme Court held in *EEOC v. Shell Oil Co.* that the existence of a valid charge is a "jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." 466 U.S. 54, 65, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984). Although we may agree with the EEOC that a subpoena enforcement hearing is not the right place to examine the "merits" of a case, we are obligated to consider whether a charge upon which formal litigation has commenced can support a continuing administrative investigation.

We first address Hearst's argument that the EEOC may no longer investigate based on Lamb's and Waddell's charges because it may no

5

longer sue upon those charges; if the EEOC cannot file suit based upon the charges, Hearst insists, the agency has no need under the statute for the information sought in the subpoenas. In analyzing this argument, we must examine the structure of Title VII to determine whether it contains any temporal limitations on the EEOC's authority to investigate. We begin with the text of the statute.

A

Under Title VII, 42 U.S.C. § 2000e *et seq.,* action by the EEOC is triggered by the filing of a charge of discrimination. A charge may be filed by an individual or by a Commissioner of the EEOC, and must specify the nature of the claimed illegal action. Charges may allege either individual cases or a "pattern or practice" of illegal discrimination. Once a charge is filed, the EEOC is empowered to investigate the charge, to mediate between the parties through informal methods of conciliation, and, if need be, to file a civil action on behalf of the aggrieved individual.

When the EEOC was originally established by Congress in the Civil Rights Act of 1964, it was not permitted to file civil suits; the EEOC's role was limited to that of an informal conciliator. 78 Stat. 259. Under the original version, the EEOC had a mere 30 days to investigate a charge and to attempt informal conciliation if reasonable cause was found. After the period expired, however, the EEOC was required to notify aggrieved individuals of the failure of conciliation. This notice commenced a 30 day period of limitations on civil actions by private individuals. 42 U.S.C. § 2000e-5(e)

6

(1970). It is apparent that Congress *generally* expected the EEOC to complete its administration of a charge within 30 days: the original version allowed the EEOC to extend its period of exclusive jurisdiction for as many as 30 additional days, and also permitted the EEOC to request a brief stay of any later civil proceeding, if necessary to complete its efforts. *Id.*

The 30-day periods were a definite failure. The legislative history of the 1972 Amendments to Title VII is replete with references to the EEOC's staggering backlog of cases. *See, e.g.,* H.R.Rep. No. 92-238, 54-55 (1971); S.Rep. No. 92-415, 23 (1971). Most members of Congress also agreed that the EEOC needed more substantial enforcement powers. Yet legislators disagreed whether the EEOC should be permitted to adjudicate claims and issue cease-and-desist orders. Those legislators who were wary of investing the EEOC with too much enforcement authority favored an enforcement approach through the courts. After extensive debate, Congress approved amendments adopting enforcement through the courts, and established significantly longer periods for EEOC administration and conciliation of charges. Equal Employment Opportunity Act of 1972, 86 Stat. 103 (amending Civil Rights Act of 1964).

Considering the previous structure and Congressional hesitance about establishing broad enforcement authority, one might expect to see some definite restrictions, including time limitations on the EEOC in relation to its handling of individual charges. Indeed, this appears to be exactly what the amended version establishes,

7

under a straightforward reading of the text.  Section 706 of the Act, as amended, creates a complex timetable for the administration of individual charges.[2]

The process begins with the filing of the charge.  Under subsection (b), the EEOC must notify the respondent employer of the charge within 10 days after it is filed.  The EEOC is then required to investigate in order to reach a determination of reasonable cause or no reasonable cause.  The EEOC is required to reach a cause determination "as promptly as possible and, so far as practicable, *not later than one hundred and twenty days from the filing of the charge*."  42 U.S.C. § 2000e-5(b) (emphasis added).  If the EEOC finds no reasonable cause to believe a violation has occurred, it shall dismiss the charge.  *Id.*  If reasonable cause *is* found, the preferred method of resolution remains informal conciliation.  To that end, the EEOC is not permitted to file a civil action until at least thirty days have passed, and then only if conciliation efforts have not been successful.  42 U.S.C. § 2000e-5(f).

In this same section providing for suit by the EEOC, Congress also established a 180-day outer limit on the EEOC's exclusive jurisdiction by thereafter allowing private parties to file suit.  Subsection (f) of § 706, § 2000e-5(f), next states that

---

[2]Two different schedules are established.  A longer schedule applies if a state or local law also prohibits the conduct or practice in question, and the EEOC has established many deferral and worksharing agreements with state and local agencies.  42 U.S.C. § 2000e-5(c)-(e).  This alternate schedule is not implicated in this appeal, and references to it will be omitted.

8

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ..., the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... *shall* so notify the person aggrieved *and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.*

42 U.S.C. § 2000e-5(f) (emphasis added). This rather lengthy sentence establishes a temporal limitation—180 days—that is critical to the statutory scheme, and that we must examine carefully.

At the beginning of this same subsection, the statute is clear that in the first 180 days after the charge is filed, only the EEOC is permitted to sue (although not until at least 30 days have passed). Next, the above-quoted sentence unambiguously establishes the right of private parties to sue after 180 days have passed. What is unclear is the effect this provision has upon the EEOC's investigative and enforcement authority. That is, does the quoted sentence merely command the EEOC to notify the charging party of some change in the posture of the charge as it relates to her, or does the 180-day mark also limit the Commission's authority to proceed by indicating that the time for proceedings by the Commission has passed?

In examining this language, we first observe that the giving of notice to the private parties is *not* a discretionary function: the EEOC "shall" give the notice specified when the period expires. Yet despite the unambiguous meaning of the word "shall," the courts

9

have held that the EEOC is *not* required to issue after 180 days the notice that begins the 90-day period within which the private party may sue, "considering the insurmountable workload difficulties of the EEOC which prevent resolution of claims in an expeditious manner." *Zambuto v. American Tel. & Tel. Co.,* 544 F.2d 1333, 1334 n. 5 (5th Cir.1977). *See also Forbes v. Reno,* 893 F.Supp. 476, 482 (W.D.Pa.1995), *affirmed,* 91 F.3d 123 (3d Cir.1996) (same).

Even in *Zambuto,* though, we criticized the EEOC's then-practice of sending letters that notified charging parties that *they* could choose when to receive a *second* letter that would begin the 90-day limitations period. The current practice of the EEOC, however, is not substantially different. The EEOC issues "right-to-sue" notices only when it actually reaches a determination on cause, *or* when an aggrieved party *requests* the notice after 180 days have passed. 29 C.F.R. § 1601.28. This practice continues to allow aggrieved parties to select when they would like the 90-day limitations period to begin, and is contrary to the plain terms of the statute.[3] We note that our permissive decision in *Zambuto,* excusing a governmental agency's non-compliance with the explicit terms of the statute, was based upon the EEOC's status as a "fledgling" agency facing a substantial workload. Nearly two decades later, the EEOC should be sufficiently organized that we may expect it to follow the clear instructions of Congress.

---

[3]Lamb and Waddell, in fact, requested and were issued right to sue notices some 225 days after they filed their original charges.

Our second observation concerns the nature of the notice that the EEOC must send. The notice required is notice that either (1) the charge has been dismissed, or (2) that 180 days have passed without a successful conciliation. The statute does not require that the notice specifically advise the charging party that the statutory 90-day period during which she has the right to sue has begun to run, although such a warning undoubtedly is permitted.

This point is important, however, because the critical question is whether the clause beginning with "and within ninety days" creates a further right to sue in private parties, which coexists along with the Commission's right to sue—or whether the clause terminates by implication the EEOC's right to sue at this point in the enforcement scheme by shifting enforcement authority to the charging party. Again, the relevant statutory language reads:

> [after 180 days] the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought ... (A) by [any charging parties] or (B) by [persons aggrieved by a practice challenged in a Commissioner's charge].

At this point, the EEOC has enjoyed an exclusive right to sue for as many as 150 days (180 days less the first 30 days during which the EEOC is limited to conference and conciliation), and at least 60 days if the EEOC timely completed its investigation.

The question, more clearly stated, is which of the following readings of the statute correctly states Congress' intent?

> 1. 180 days pass, so notice mandatorily issues, and now (A) the charging party or (B) the aggrieved party on whose behalf the charge was filed also has the right to sue, along with the EEOC, or

11

2. 180 days pass, so notice mandatorily issues, the EEOC's right to sue terminates, and now enforcement lies with the persons identified in categories (A) and (B) only.

If the text read that the EEOC "shall notify the person aggrieved *that* within ninety days [he may sue]" our task would be simple. In that case, the clause would describe the content of the notice, and the purpose of the notice would be to inform the charging party that they could now file suit if displeased with the EEOC's progress. In that case, providing the notice would simply be part of the EEOC's administrative duties.

But the clause beginning with "and within ninety days" does not describe the content of the notice. After 180 days, the EEOC is required to issue formal, written notice that it has neither filed suit nor successfully conciliated the charge—both facts of which the charging party should already be aware. Given that the notice serves little purpose as notice, we believe that the purpose of the notice at the end of the 180-day period primarily must be to signify the end of agency action with respect to the charge.

This conclusion is strengthened by the statute's requirement that the notice at issue also be provided if the charge is *dismissed:* "If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days ..." 42 U.S.C. § 2000e-5(f). The dismissal of a charge must surely terminate all agency action upon it, strongly suggesting that this section identifies the point at which EEOC processing ceases.

We believe, therefore, that this clause marks the beginning of a new statutory period, during which *only* the persons who fall into

12

categories (A) and (B) may sue on the charge.  We concede that these interpretive questions are difficult, but to read the "and within ninety days" clause to serve only as a notice to the aggrieved parties would leave the EEOC's right to sue untethered to *any* statute of limitations.  We should not accept lightly that a Congress hesitant about the new enforcement powers it was establishing intended those powers to be without any end in time.

The statute clearly reflects that Congress expected the EEOC to complete investigations within 120 days.  Leaving an additional 60 days for the EEOC to determine whether suit should be filed gives the EEOC a reasonable schedule within which to work.  Such time constraints should not hinder the EEOC unreasonably or significantly in its ability to vindicate the goals of Title VII.  Indeed, the EEOC may seek to intervene in any subsequent private civil action if "the case is of general public importance."  42 U.S.C. § 2000e-5(f).  Additionally, if its investigation revealed a wider or continuing problem, the EEOC could simply file a Commissioner's charge and proceed with further investigation or a civil action.  42 U.S.C. § 2000e-5(b).

If Title VII were interpreted as we believe the text demands, we logically could conclude only that the EEOC's investigation of a charge must also end, absent some extenuating circumstance peculiar to the case under investigation that invokes principles of equity, after the 180-day period passed—irrespective of whether the charging party elected to sue.  However, this view of Title VII has been rejected by the courts.  Several courts, including our court,

13

have held that the EEOC may still file suit even after the 180-day period had passed. *See, e.g., EEOC v. Louisville & Nashville R.R.,* 505 F.2d 610 (5th Cir.1974), *cert. denied,* 423 U.S. 824, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir.1975). This conclusion was accepted by the Supreme Court in *Occidental,* 432 U.S. at 366, 97 S.Ct. at 2454. In *Occidental,* the EEOC filed suit against the responding employer some three years and two months after the employee's charge of discrimination was filed. The Supreme Court found that the text of Title VII did not contain a limitation period for filing suit that applied to the EEOC, and further found that the legislative history of the 1972 amendments supported the position that no limitation applied to the EEOC's right to file suit. *Id.* at 361, 366, 97 S.Ct. at 2451-52, 2454. The Court concluded that the purpose of the 180-day cutoff was not to ensure that EEOC action was promptly concluded, but to create "an alternative enforcement procedure":

> The 180-day limitation period provides only that this private right of action does not arise until 180 days after a charge has been filed. Nothing in § 706(f)(1) indicates that EEOC enforcement powers cease if the complainant decides to leave the case in the hands of the EEOC rather than to pursue a private action.

*Id.* at 361, 97 S.Ct. at 2452. Consequently, many cases pend for years in "administrative limbo" with the EEOC, as information grows stale and memories fade. At oral argument, counsel for the EEOC maintained that there were no temporal limitations on the EEOC's ability to investigate an employer named in a charge of discrimination. Counsel suggested that the EEOC might not be permitted to continue an investigation once it issued a no-cause

14

determination, but we observe that the EEOC's own regulations permit it to reconsider a no-cause determination at any time, even if the 90-day period for suit by the charging party has passed. 29 C.F.R. § 1601.19(b). Finality is apparently not a word in the EEOC lexicon.

Notwithstanding that the 180-day period appears to be an important part of the statutory design, it has been rendered practically meaningless. Under court decisions and regulations promulgated by the EEOC, the 180-day period provides no assurance of prompt action by the EEOC and provides no end to intrusive agency action for the responding employer. Nor does it limit the period during which the charging party may sue, because the EEOC generally issues the "right to sue" notice not when 180 days pass but, as in this case, when the charging party requests one. The EEOC's regulations even indicate that it may issue a "right-to-sue" notice, without completing its investigation, *before* the 180 days have passed if it so chooses. See 29 C.F.R. § 1601.28(a)(2). The 180-day limitation has become no limitation. Hearst's argument that the EEOC may not enforce its subpoenas because it can no longer file suit therefore fails.[4]

---

[4]We note that Hearst's argument did not focus upon the 180-day period, but rather upon the 90-day period that limits the charging party's right to file suit once the notice of right to sue is received. Hearst's reliance on *C & D Sportswear,* 398 F.Supp. at 305, is unavailing. *C & D Sportswear* has been frequently criticized, and is contrary to the decision of this circuit in *Huttig Sash & Door Company,* 511 F.2d at 454, on which it purported to rely. It certainly cannot be accepted in the light of the subsequent holding in *Occidental,* 432 U.S. at 361, 97 S.Ct. at 2451-52.

15

Although the 180-day period does not terminate the EEOC's authority to investigate, we think it is statutorily significant that the "integrated, multistep enforcement procedure" established by Title VII is divided into four distinct stages: filing and notice of charge, investigation, conference and conciliation, and finally, enforcement. *See Occidental,* 432 U.S. at 359, 97 S.Ct. at 2450-51.

As we have discussed above, once a charge is filed, the EEOC must provide the named respondent with a copy of the charge within 10 days. 42 U.S.C. § 2000e-5(b). Again, the investigation stage, designed to enable the EEOC to reach a determination of reasonable cause or no reasonable cause, begins immediately after the charge is filed, and shall be completed "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." *Id.* The investigation stage is followed, if reasonable cause is found, by a conference and conciliation stage during which the EEOC is required to attempt to achieve an acceptable resolution through informal persuasion. *Id.* Only if those efforts are unsuccessful should a case enter the formal enforcement stage. Congress established that the EEOC may only file suit if it has been unable to secure a conciliation agreement, and if at least thirty days have passed from the filing of the charge. 42 U.S.C. § 2000e-5(f). Additionally, the private right of action does not arise until 180 days have passed from the filing of the charge—sixty days after the EEOC should have

completed its investigation.  These separate stages are important to the statute's enforcement scheme because of the different roles that the EEOC plays in the management of discrimination charges: administrator, investigator, mediator, and finally, enforcer.

That Title VII's enforcement structure is deliberately divided into distinct stages is confirmed by the legislative history of the 1972 amendments, which first invested the EEOC with its broad enforcement authority.  A Senate Conference Report indicates that the amendments retained the previous structure that "enable[d] the EEOC to process a charge of employment discrimination through the investigation and conciliation stages," but additionally authorized the EEOC to go further and file a civil action "if it has been unable to eliminate an alleged unlawful employment practice by informal methods ..."  S.Conf.Rep., Cong.Rec. March 6, 1972, p. 1845.  In *Occidental,* the Supreme Court also describes the enforcement design as a "multistage scheme" defined by "a sequential series of steps beginning with the filing of a charge with the EEOC."  432 U.S. at 372, 97 S.Ct. at 2457.

Congress granted the EEOC broad investigatory authority so that the agency promptly and effectively could determine whether Title VII had been violated, and to assist the agency in its efforts to resolve disputes without formal litigation.  These purposes are no longer served once formal litigation is commenced. Instead, if the EEOC has any further interest it may intervene and pursue discovery through the courts;  or if its interest extends beyond the private party charge upon which it is acting, it may

17

file a Commissioner's charge. See 29 C.F.R. § 1601.11 (authorizing members of Commission to file charges).

The Supreme Court in *Occidental*—in which no private party had filed suit—did not address these concerns; the employer challenged only the length of the enforcement stage, not whether the enforcement action terminated the investigative stage. 432 U.S. at 357, 97 S.Ct. at 2450 ("[t]he sole question presented by this case is what time limitation, if any, is imposed on the EEOC's power to bring such a suit"). In *Occidental,* both the investigation and the conference and conciliation stages had passed. Upon receiving notice that conciliation efforts had failed, the charging party requested that her case be referred to the EEOC's General Counsel for formal enforcement action. 432 U.S. at 358, 97 S.Ct. at 2450. The Court noted that the complainant elected "to leave the case in the hands of the EEOC" rather than file suit herself. *Id.* at 361, 97 S.Ct. at 2451-52. The Court concluded that the complainant properly could choose to leave the litigating to the agency: "the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC." *Id.*

The case before us is not controlled by *Occidental.* We do not decide what independent enforcement authority remains with the EEOC now that the private parties have initiated their own enforcement proceedings. We conclude only that the time for *investigation* has passed. Shelley Lamb and Joyce Waddell have moved their claims into the litigation stage. They not only affirmatively requested

18

their right to sue notices, but instituted a civil action against Hearst based on the exact acts alleged in their charges and accompanying affidavits. The "alternative enforcement procedure" identified by the Court in *Occidental* has begun, and the time for investigation based upon Lamb's and Waddell's charges has passed.

Our conclusion that the EEOC may not continue to investigate a charge once formal litigation by the charging parties has commenced makes it unnecessary for us to consider Hearst's contention that the subpoenas seek information not relevant to the charges under which they were issued.

IV

Accordingly, we hold that, in a case where the charging party has requested and received a right to sue notice and is engaged in a civil action that is based upon the conduct alleged in the charge filed with the EEOC, *that charge* no longer provides a basis for EEOC investigation. Nothing in this opinion should be construed as holding that the EEOC may not seek the same information that it seeks in these subpoenas, so long as it is on the basis of a different individual charge or a Commissioner charge.

The judgment of the district court is hereby REVERSED, and this action is REMANDED with direction to enter an order denying the application to enforce.

REVERSED and REMANDED.