**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Respondent.**

No. Civ.A. 97–101–MC.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 10, 1999.

Arlene T. Shadoan, Gerald Kiel, Victor M. Lawrence, Equal Opportunity Employment Commission, Baltimore, MD, for Applicant.

Robert J. Smith, Kirkpatrick and Lockhart, Washington, DC, Diane M. Ennist, Federal Home Loan Mortgage Corporation, McLean, VA, for Respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This administrative subpoena enforcement action presents the question whether the Equal Employment Opportunity Commission (EEOC) may obtain enforcement of a document subpoena where, as here, the charge and investigation giving rise to the subpoena have now ripened into the issuance of a right to sue letter and the filing of a suit that includes all of the allegations of the charge, including its class allegations. Put another way, the question is whether the EEOC's authority to seek enforcement of a document subpoena issued in connection with an investigation of a charge ends with, or continues beyond, i) the issuance of a right to sue letter and a determination stemming from the investigation and ii) the institution of a private suit based on the conduct set forth in the charge.[1]

## I.

In December 1996, Tony Morgan, a former Federal Home Loan Mortgage Corporation ("Freddie Mac") employee, filed an EEOC charge against Freddie Mac and various of its supervisory personnel, alleging unlawful discrimination on the basis of race against both Morgan and black employees as a class.[2] The filing of this charge triggered an EEOC investigation of Freddie Mac. As a part of the investigation, the EEOC requested that Freddie Mac submit to the EEOC all internal audits and surveys of its workplace and practices. On July 18, 1997, Freddie Mac produced to EEOC a partial, redacted version of a report entitled "Diversity Assessment," summarizing the conclusions of an internal investigation conducted for Fred-

---

1. Also presented are questions relating to the existence, application and waiver of a self-evaluative privilege. None of these questions is reached or decided here given the resolution of the question concerning the EEOC's authority to seek enforcement of the subpoena at issue.

2. The narrative in the charge states in full:
   I. I began my employment with the above named Respondent on January 17, 1995. My position was Director of Executive Corporate Relations. I was informed in January 1996, that my position was being abolished due to a reduction in force. I applied for several position within the corporation but was not selected. Two of the positions were filled by employees that I believe are not as qualified as I am. I was terminated on March 31, 1996.
   II. Respondent has given me no reason for my non-selection.
   III. I believe that I have been discriminated against because of my race, Black, with respect to steering, initial job assignment, wages, reassignment, promotion and termination in violation of Title VII of the Civil Rights Act of 1964, as amended.
   IV. I believe that Blacks as a class have been discriminated against with respect to steering, initial job assignments, wages, reassignments, promotions and termination in violation of Title VII of the Civil Rights Act of 1964, as amended.

die Mac by outside consultants in 1994, with a cover letter citing self-evaluative privilege cases to justify the redactions. The EEOC then requested production of the unredacted Diversity Assessment; Freddie Mac replied that it would not voluntarily disclose the entire document. Thereafter, on July 21, 1997, the EEOC issued a subpoena to Freddie Mac seeking any and all reports on diversity studies or investigations conducted internally or by outside consultants, including the unredacted Diversity Assessment. Freddie Mac filed a timely petition for revocation of the subpoena, which the EEOC denied on August 11, 1997, setting August 25, 1997 as the deadline for production of all responsive documents, including the Diversity Assessment. Freddie Mac again declined to produce the document. Thereafter, the EEOC filed here its "Application for Order to Show Cause Why Subpoena Should Not Be Enforced" on September 26, 1997.

At a status conference on December 19, 1997,[3] Freddie Mac argued both that the Diversity Assessment was irrelevant and that, in any event, the document was protected by the self-evaluative privilege. Further briefing was ordered on the self-evaluative privilege issue, and the matter was taken under advisement. Yet, the issue remained undecided because the Court was under the mistaken impression that the matter had been resolved by the parties.[4] In any event, the matter remained undecided until it was brought to the Court's attention in December 1998. Prior to this, on August 12, 1998, the EEOC issued a "Determination" and a right to sue letter. The Determination included the following statements in separate, consecutive paragraphs:

> The Commission makes no finding as to the allegations of demotion and initial job assignments.

> Based on the preceding analysis, I have determined that the evidence obtained during the investigation establishes that the Respondent violated Title VII of the Civil Rights Act of 1964, as amended.

> A subpoena enforcement action remains pending in the Eastern District of Virginia.

> I reserve the right to issue an addendum to this determination to include any additional evidence obtained as a result of the opinion issued in this action.

Additionally, the Determination further stated that an EEOC representative would soon contact the parties (Morgan and Freddie Mac) to begin the conciliation process.

The right to sue letter i) notified Morgan of his right to sue, and the requirement that he do so within 90 days, ii) indicated that "[m]ore than 180 days have expired since the filing of this charge," and iii) indicated also that "[i]t has been determined that the Commission will continue to investigate your charge."

On August 21, 1998, less than two weeks after the right to sue letter issued, Morgan filed suit in the United States District Court for the District of Columbia asserting a class action against Freddie Mac under Title VII, 42 U.S.C. § 1981, and the D.C. Human Rights Act.[5] In paragraph 87 of the complaint, Morgan asserted that

> [t]he questions of law common to the above described class are: (a) whether

---

**3.** Originally, the EEOC also filed, in addition to this application for enforcement of the subpoena, a separate complaint seeking, among other relief, a preliminary injunction against Freddie Mac. The separate complaint was docketed as Civ. No. 97–1157–A. The two matters were addressed together in an October hearing, and the preliminary injunction was denied; the status conference was to discuss any remaining issues.

**4.** The source of the confusion may have been the notification the Court received concerning the parties' resolution of Civ. No. 97–1157–A.

**5.** At a recent hearing in this matter, the EEOC's counsel stated that a motion to withdraw the class action allegations has been filed, and is pending, in the District of Columbia suit.

or not the hiring, placement, salary (including fringe benefits), and promotion practices of defendant Freddie Mac deprives the members of the class the civil rights secured to the them by Title VII, by denying them positions, salaries, and other working conditions granted to similarly qualified white persons.

Approximately three months later, the EEOC raised the document subpoena issue again by filing, on December 11, 1998, a Memorandum of New Evidence regarding the application of the self-evaluative privilege. In this memorandum, the EEOC argued essentially that the self-evaluative privilege, even assuming its existence, had been waived because the Diversity Assessment had not been kept confidential.[6]

## II.

The threshold question is whether the EEOC retains the authority to seek enforcement of a document subpoena after it has issued a determination and a right to sue letter on the charge giving rise to the subpoena and after a private suit has been instituted on the conduct alleged in the charge. No controlling Fourth Circuit precedent exists on this precise issue,[7] but the Fifth Circuit opinion in *EEOC v. Hearst Corp.*, 103 F.3d 462 (5th Cir.1997), squarely addresses the continued existence of EEOC investigative authority in these circumstances, analyzes the issue thoroughly, and reaches a sound result. In *Hearst*, the Fifth Circuit held that "in a case where the charging party has requested and received a right to sue notice and is engaged in a civil action that is based upon the conduct alleged in the charge filed with the EEOC, that charge no longer provides a basis for EEOC investigation." *See id.* at 470. The Court went on to note that the EEOC could

---

6. In support of this claim, the EEOC submitted the sworn affidavits of two former employees, which, among other things, attached as an exhibit a memorandum Freddie Mac's CEO distributed to all employees regarding the Diversity Assessment. This memorandum stated that the two most significant findings of the Diversity Assessment were the existence of two perceptions: i) "that women and minorities disproportionately experience a lack of opportunities to advance in the company as compared to white males" and ii) "that women and minorities are not hired in the same proportions as white males, and that they are not paid as well." Also included in the CEO's memorandum was a listing of other Diversity Assessment findings, including the existence of widespread perceptions of inconsistent management practices, of insensitivity to work/family conflicts and other concerns, of ongoing racial insensitivities, and of a pervasive lack of communication within Freddie Mac. In response, Freddie Mac submitted affidavits rebutting the EEOC's factual contentions that Freddie Mac had not taken appropriate steps to safeguard the confidentiality of the Diversity Assessment. Left undisputed, however, are i) the existence of the CEO's memorandum, ii) the nature of its contents, and iii) the fact of its widespread dissemination.

7. One Fourth Circuit decision, on distinguishable facts, touched briefly upon a related issue. In *EEOC v. Joseph Horne Co.*, 607 F.2d 1075, 1078 (4th Cir.1979), *rev'd on other grounds sub nom. EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981), the Fourth Circuit noted in passing that there was "no merit in Associated's contentions that enforcement of the subpoena should be forbidden because ... a charging party (Alice M. Corvino) filed suit to redress the discrimination allegedly practiced by Horne against her." It is a significant distinction that there, unlike the case at bar, there were multiple charging parties so that the issuance of a right to sue letter to one of these parties did not exhaust the EEOC's investigative authority with respect to the remaining charges. *See Associated Dry Goods Corp.*, 449 U.S. at 593, 101 S.Ct. 817 (noting that seven separate charges had been filed against the employer between 1971 and 1973). Therefore, the precise issue presented here was not presented in *Joseph Horne Co;* rather, the issue there was whether the EEOC should be precluded from pursuing its investigation whenever any private Title VII actions addressing the same violations are pending, regardless of the existence of other charges. *See Associated Dry Goods v. EEOC*, 454 F.Supp. 387, 393 (E.D.Va.1978), *aff'd sub nom. EEOC v. Joseph Horne Co.*, 607 F.2d 1075, 1078 (4th Cir.1979), *rev'd on other grounds sub nom. EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981).

continue to seek such information only on the basis of a different individual charge or a Commissioner charge. *See id.*

The foundation of the Fifth Circuit's analysis is Title VII's " 'integrated, multistep enforcement procedure' " with its four separate stages, namely, "filing and notice of charge, investigation, conference and conciliation, and finally, enforcement." *See id.* at 468 (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977)). The court noted that the separate stages are "important to the statute's enforcement scheme because of the different roles that the EEOC plays in the management of discrimination charges: administrator, investigator, mediator, and finally, enforcer." *See id.* at 469.[8] The court, after examining the legislative history,[9] concluded that "Congress granted the EEOC broad investigatory authority so that the agency promptly and effectively could determine whether Title VII had been violated, and to assist the agency in its efforts to resolve the disputes without formal litigation. These purposes are no longer served once formal litigation has commenced." *See id.* Thus, the court held that after private litigation has commenced on the charge that provided the basis for the EEOC's investigative authority, the EEOC must pursue its further interest either through intervention and discovery in the courts, or, if that interest is beyond the private party charge upon which it is acting, by filing a Commissioner's charge. *See id.*[10]

*Hearst'*s sound reasoning and rationale are persuasive and apply here, where the EEOC conducted an investigation, issued a right to sue letter and a determination, the charging party, Morgan, has sued, and a comparison of the initial charge with Morgan's complaint makes clear that it is based on precisely the same conduct as that alleged in the charge. The EEOC itself, appropriately, has moved on to the next stage in this multistage process, and is pursuing conciliation with Freddie Mac.

8. Specifically, the court noted that the purpose of the investigation stage is "to enable the EEOC to reach a determination of reasonable cause or no reasonable cause." *See Hearst*, 103 F.3d at 469. In this regard, it is noteworthy that the EEOC's authority to investigate arises only after the filing of a formal charge, either by or on behalf of an individual or by a Commissioner. *See* 42 U.S.C. § 2000e–5(b) and § 2000e–6(e); *see also EEOC v. Shell Oil Co.* 466 U.S. 54, 65, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ("[T]he existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC."); *Hearst*, 103 F.3d at 464; *EEOC v. Appalachian Power Co., Inc.*, 568 F.2d 354, 355 (4th Cir.1978) (requirements of § 706(b) of the Civil Rights Act as to filing of charge are mandatory). Courts, therefore, must deny enforcement of a subpoena when the charge or notice of the charge does not satisfy § 706(b), which requires that the notice of the charge should contain the date, place and circumstances of the alleged violation, and that the charge be made in writing under oath. *See, e.g., EEOC v. Dean Witter Co., Inc.*, 643 F.2d 1334 (9th Cir.1980) (upholding denial of enforcement where charge failed to meet § 706(b) requirements).

9. *See Hearst*, 103 F.3d at 468 (citing S.Rep. No. 92–681, 118 Cong.Rec. 7166, at 7167 (March 6, 1972)).

10. The Fifth Circuit's conclusion, moreover, is further supported by the Supreme Court's comparison of a federal agency's investigative functions to those of the grand jury. In *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 94 L.Ed. 401 (1950), the Supreme Court stated that such investigative functions are "analogous to the Grand Jury.... When investigative and accusatory duties are delegated by statute to an administrative body, it, too [like the Grand Jury], may take steps to inform itself as to whether there is probable violation of the law." Such a comparison suggests that just as use of a grand jury solely to continue to investigate an individual after an indictment has issued is clearly improper, so, too, would it be improper to allow the EEOC to enforce an investigative subpoena after the only charging party has been issued a right to sue letter and instituted suit on the basis of the conduct alleged in the charge. *See United States v. Neely*, 76 F.3d 376, 1996 WL 60329 (4th Cir. 1996) (unpublished disposition) (government may not utilize grand jury "solely or even primarily for the purpose of gathering evidence in pending litigation").

If that fails, and if the EEOC's interests are beyond the lawsuit filed by Morgan, the EEOC may file a charge, institute its own suit, and seek the document in the context of that suit pursuant to the Federal Rules of Civil Procedure.[11] Alternatively, the EEOC may seek to intervene in Morgan's action, and pursue the complete Diversity Assessment there through discovery. But it may not use its investigative powers in this suit at this time because those powers have expired.[12] Were the rule otherwise, there would be significant potential for disruption of the statutory scheme devised by Congress to redress discrimination in the workplace through both litigation and non-litigation solutions. Consider, for example, the disruption that might be caused by the issuance of investigative subpoenas amidst an ongoing conciliation process. *Hearst* correctly precludes any such disruption by preserving the Congressional scheme that separates the EEOC's investigative role from its role in conciliation or litigation. Thus, once the investigative stage has ended, the agency's authority to issue investigative subpoenas also ends.

The EEOC's opposing argument is unpersuasive. It provides no authority contrary to *Hearst*, nor does it attack or undermine *Hearst*'s reasoning. Instead, it relies solely on its statement in the right to sue letter to the effect that the investigation would continue. This reliance is unavailing for it amounts to nothing more than an *ipse dixit*. The EEOC's bald assertion that its investigative powers continue after the issuance of a right to sue letter and a determination cannot create a power Congress did not authorize.

In sum, the EEOC's authority to issue and enforce the document subpoena expired with the issuance of its Determination and the right to sue letter. Thus, the EEOC no longer has the authority to pursue its administrative subpoena enforcement action as a part of its investigation into Morgan's charge and hence the application to enforce the subpoena must be denied.[13]

**11.** *See* 29 C.F.R. § 1601.11 (authorizing Commission charges); 29 C.F.R. § 1601.27 (authorizing civil actions by Commission).

**12.** The EEOC regulations provide additional support for this conclusion, as they make clear that a determination shall issue only after completion of an investigation. *See, e.g.,* 29 C.F.R. § 1601.21 ("After completing its investigation, where the Commission has not settled or dismissed a charge or made a no cause finding as to every allegation addressed in the determination under § 1601.19, the Commission shall issue a determination that reasonable cause exists to believe that an unlawful employment practice has occurred or is occurring under Title VII or the ADA.").

**13.** This result renders it unnecessary to reach the privileges issues, which are governed generally by the following principles. The self-evaluative privilege is recognized by some, but not all, courts. *See Etienne v. Mitre Corp.,* 146 F.R.D. 145, 147 (E.D.Va.1993) ("[T]he privilege has remained 'largely undefined and not generally recognized by many authorities.' "). Some courts protect only the narrative, evaluative or analytical portions, requiring disclosure of factual portions. *See Troupin v. Metropolitan Life Ins. Co.,* 169 F.R.D. 546, 549 (S.D.N.Y.1996) (requiring disclosure of factual portions of diversity report and protecting only narrative, evaluative or analytical portions). But even those courts that do recognize the privilege emphasize that it can be waived. *See, e.g., Coates v. Johnson & Johnson,* 756 F.2d 524, 552 (7th Cir.1985) (voluntary use of affirmative action efforts to prove nondiscrimination at trial waived privilege as to self-critical portions of affirmative action plan); *Equal Employment Opportunity Commission v. General Telephone Co.,* 885 F.2d 575, 578 (9th Cir.1989) (voluntary use of equal opportunity efforts to prove nondiscrimination opens door and waives privilege); *Maxey v. General Motors Corp.,* 1996 WL 737537 (N.D.Miss. December 16, 1996) (if self-critical privilege exists in Fifth Circuit, "it is not absolute and it may be waived"); *In re the Leslie Fay Companies, Inc. Securities Litigation,* 152 F.R.D. 42, 46 n. 7 (S.D.N.Y.1993) (self-critical privilege waived by disclosure of report to SEC). Here, it appears that significant portions of the Diversity Assessment have been disclosed to all employees and thus the self-evaluative privilege may be waived as to the entire document. *See, e.g., Bergman v. Kemp,* 97 F.R.D. 413, 416 (W.D.Mich.1983) (stating in self-evaluative privilege case that "[v]oluntary disclosure of a significant part of the privileged communications may waive the privilege").

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.