[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 06-13073

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 21, 2007
THOMAS K. KAHN
CLERK

————————————————

D. C. Docket No. 04-02590-CV-CAM-1

DANIEL CRAWFORD,

Plaintiff-Appellant,

versus

CITY OF FAIRBURN, GEORGIA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

**(February 21, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and NANGLE,[*] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

This appeal requires us to decide whether Daniel Crawford participated in an investigation by the Equal Employment Opportunity Commission when he conducted an in-house investigation of a fellow police officer's complaint of sexual harassment and reported his findings to his employer. The EEOC began its investigation of an earlier complaint by the officer nearly a year before Crawford opened his investigation of the officer's later complaint, and the EEOC issued a letter of determination regarding the earlier complaint before Crawford completed his investigation of the later complaint. Based on that chronology, Crawford's employer, the City of Fairburn, Georgia, argues that Crawford did not participate in the EEOC investigation and failed to establish a prima facie case of retaliation in violation of the participation clause of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). We agree with the City and affirm the summary judgment against Crawford's complaint.

## I. BACKGROUND

We describe the facts based on a review of the evidence in the light most favorable to Crawford. In September 2002, Officer Louise Tallman of the Fairburn Police Department filed an internal complaint of sexual harassment against Sergeant James Smith. In December 2002, Tallman filed an EEOC charge

2

against the City that alleged age and sex discrimination based on Smith's alleged harassment.

In March 2003, the City hired Crawford to serve in its Police Department as a Major in the administration of Chief of Police Frederick Brown. Both men were hired to address pervasive problems of management and morale. Crawford oversaw the operations of the Department, including personnel matters and internal affairs investigations.

In November 2003, Tallman filed another internal complaint against Smith. Tallman alleged a second incident of sexual harassment that she believed occurred in response to her still-unresolved 2002 complaint. Crawford began investigating the complaint, and he added to his investigation allegations of insubordination, failure to support the Department, and engaging in gossip and rumors.

On December 11, 2003, the EEOC issued a letter of determination regarding Tallman's charge filed in 2002. The EEOC found that it was more likely than not that Tallman experienced sexual harassment. The EEOC did not address Tallman's second complaint, because Tallman had not filed a charge with the agency regarding that matter.

Later in December 2003, Crawford met with Chief Brown, the City Administrator, and City attorneys to discuss his investigation of Smith. The City

Attorney asked the EEOC to delay conciliation for Tallman's 2002 complaint until Crawford completed his investigation. In another meeting later that month, the City Administrator told Crawford that it was Crawford's fault that the EEOC was investigating the City, Crawford had "opened up a can of worms," and Crawford's investigation was "going to get the City sued."

On January 22, 2004, Crawford submitted the report of his investigation to Chief Brown. The one-page report stated findings of internal violations such as insubordination, failure to support the Department, and gossip; a finding of no violation with respect to the complaint of a hostile work environment; a finding of no violation with respect to Tallman's 2002 complaint of verbal harassment; and a finding that the 2003 incident, although intimidating, was not sexual harassment. The City Administrator and City Clerk read the report and concluded that the investigation had found no evidence of unlawful discrimination or harassment. The City Attorney then informed the EEOC that the investigation was complete and there had been no findings of Title VII violations against Tallman. Crawford's report and supporting documents were never submitted to the EEOC.

By the end of 2003, the City had become dissatisfied with Crawford's performance. Crawford had created a new traffic enforcement unit within the Department, and its occasional patrolling of Interstate 85 proved unpopular with

the City Administrator. Crawford was also involved with the termination, reinstatement, and resignation of a disgruntled police dispatcher in December 2003. In February 2004, the Mayor and City Council took interest in the alleged problems with scheduling, understaffing, and morale in the dispatch department. The City Administrator then raised several of his concerns about the Police Department, including staff discontent, unfair scheduling practices, poor management, and poor communication with the City—but not including the sexual harassment allegations—and recommended that Crawford be terminated, and the Council agreed. The Administrator explained to Chief Brown that Crawford would be terminated because of the problems involving the patrolling of Interstate 85, the dispatchers, overtime pay, and the accuracy of the investigation of Tallman's complaints. Chief Brown told Crawford that the termination was based on the accuracy of the Tallman investigation, the Interstate 85 controversy, and the problems with the dispatcher. Brown allowed Crawford to resign on February 27, 2004.

After his resignation, Crawford filed an EEOC charge, and the EEOC issued a notice of right to sue. Crawford sued the City and complained that the City had retaliated against him for conducting the Tallman investigation. The City moved for summary judgment. The district court concluded that Crawford had engaged

in protected activity but failed to establish that the legitimate, nondiscriminatory reasons for Crawford's termination proffered by the City were pretextual. The district court granted summary judgment for the City.

## II. STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u> and view the evidence in the light most favorable to the nonmoving party. <u>Brooks v. County Comm'n</u>, 446 F.3d 1160, 1161-62 (11th Cir. 2006). Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. DISCUSSION

To resolve this appeal, we must first address whether Crawford established a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). To have established prima facie retaliation, Crawford must have demonstrated that (1) he engaged in statutorily protected expression, (2) he experienced an adverse employment action, and (3) there was a causal link between the protected expression and the adverse action. <u>Goldsmith v. City of</u>

Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). If Crawford failed to establish a prima facie case, then we need not address the nondiscriminatory reasons proffered by the City.

Crawford argued that he engaged in expression protected by the so-called participation clause. Under Title VII, an employee is protected from discrimination if "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e-3(a); Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999). Under the participation clause, "an investigation, proceeding, or hearing" encompasses, at a minimum, EEOC investigations of unlawful discrimination. See 42 U.S.C. § 2000e-5(b); Clover, 176 F.3d at 1352-53.

We have considered twice the extent to which the participation clause protects an employee who participates only in an in-house investigation of a complaint of discrimination. In Clover, we concluded that participation in an internal investigation was protected when the investigation was conducted after and in response to a notice of charge of discrimination that the employer had received from the EEOC. Id. at 1353. After Clover, we concluded that the

7

participation clause does not protect participation in an internal investigation conducted before the employer received from the EEOC a notice of charge of discrimination. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). We reasoned that the notice of charge of discrimination apprises the employer that any information it collects can be submitted to and considered by the EEOC as a part of the EEOC investigation. Clover, 176 F.3d at 1353 (citing 29 C.F.R. § 1601.15(a)). Notice that an employee may be participating indirectly in an EEOC investigation is essential to invoke the protections of the participation clause.

Although the protection of participation "in any manner" is to be read broadly, see id. (citing Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1006 n.18 (5th Cir. 1969)), the limiting requirement of participation "in an investigation, proceeding, or hearing under this subchapter" establishes that Congress did not intend the protection of the participation clause to be infinite. An excessively broad interpretation of the participation clause risks rendering the protections of the opposition clause meaningless. Total Sys., 221 F.3d at 1174 n.3. The participation clause is tied to the pendency of an investigation, proceeding, or hearing of the EEOC.

An EEOC investigation, and an employee's participation in it, ends when the EEOC either dismisses the charge or issues a letter of determination that states its final findings about the charge. See 29 C.F.R. §§ 1601.18, 1601.19(a), 1601.21(a). At that point, the employer has notice that the investigation has concluded. The events that follow either a dismissal or a letter of determination are separate from the investigation by the EEOC.

The text of Title VII and corresponding regulations also establish that informal methods of remedying a charge are separate from the activities covered by the participation clause. "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). The "informal method" of conciliation, although an important part of the remedial process, see 29 C.F.R. § 1601.24(a), is distinct from the "investigation" that results in the letter of determination. Conciliation is also not a "proceeding"; the statute uses the word "proceedings" to refer to enforcement actions in state courts and agencies and lawsuits in federal courts. See 42 U.S.C. § 2000e-5(c), (d), (f). Because the participation clause protects only participation "in an investigation, proceeding, or hearing under this subchapter,"

9

an employee's participation in only the conciliation process is not protected activity under that clause. But see Aquino v. Sommer Maid Creamery, Inc., 657 F. Supp. 208, 210 (E.D. Pa. 1987) (reaching contrary conclusion).

Crawford argues that the issuance of a notice of right to sue or the commencement of litigation in federal court is a better end-point, citing EEOC v. Hearst Corp., 103 F.3d 462, 469-70 (5th Cir. 1997), but we disagree. The notice of right to sue often follows the letter of determination, but the investigation ends when the letter of determination is issued. A notice of right to sue also is automatically issued following a failure of conciliation, 29 C.F.R. § 1601.28(b), but the informal method of conciliation is separate from the investigation by the EEOC. The filing of a lawsuit by a complainant is even more remote from the investigation by the EEOC.

Crawford's investigation of Tallman's complaint in 2003 was not part of the EEOC investigation of Tallman's earlier complaint. The EEOC investigation had ended before Crawford reported the findings of his investigation, which, he complains, led to his termination. The EEOC issued its letter of determination on December 11, 2003. Crawford completed his investigation and submitted his report to Chief Brown on January 22, 2004.

10

The record, viewed in the light most favorable to Crawford, suggests that the City became displeased with Crawford's investigation after the investigation by the EEOC had ended. The record does not reflect that Crawford or the City submitted any new evidence to the EEOC in November or December 2003. At most, the record establishes that City officials thought the results of Crawford's investigation might affect the conciliation process. Because Crawford failed to create a genuine issue of material fact about whether he participated in protected expression, his complaint of retaliation fails as a matter of law.

## IV.  CONCLUSION

The summary judgment for the City is

**AFFIRMED.**

11