**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

　　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

FEDERAL EXPRESS CORPORATION,

　　　　　　　*Defendant-Appellant.*

No. 06-16864

D.C. No.
CV 06-0276 RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
June 13, 2008—San Francisco, California

Filed September 10, 2008

Before: A. Wallace Tashima, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Tashima

12583

## COUNSEL

Frederick L. Douglas, Memphis, Tennessee, for the defendant-appellant.

Susan R. Oxford, Equal Employment Opportunity Commission, Washington, DC, for the plaintiff-appellee.

Laura Ann Giantris, McGuiness Norris & Williams, Washington, DC, for *amici curiae* The Chamber of Commerce of the United States of America, and Equal Employment Advisory Council.

## OPINION

TASHIMA, Circuit Judge:

We consider three issues pertaining to Federal Express Corporation's ("FedEx") refusal to comply with an administrative

subpoena issued by the Equal Employment Opportunity Commission ("EEOC" or "Commission"). First, we consider whether FedEx's compliance with an administrative subpoena in another case, which resulted in FedEx providing the EEOC with the same information that the EEOC seeks to compel in this case, moots this appeal. We hold that it does not. Second, we consider, as a matter of first impression, whether the EEOC retains the authority to issue an administrative subpoena against an employer after a charging party has been issued a right-to-sue notice and instituted a private action. We hold that the EEOC does. Third and finally, we consider whether the EEOC subpoena in this case, which does not seek direct evidence of discrimination, but instead, seeks general employment files in order to help the EEOC draft future information requests, seeks evidence "relevant" to a charge of systemic discrimination. We hold that it does. In light of these holdings, we affirm the district court's decision to enforce the administrative subpoena.

## JURISDICTION

The district court had jurisdiction to determine the enforceability of an administrative subpoena pursuant to §§ 706(b) and 710 of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5(b) (requiring the EEOC to investigate charges of discrimination); *id.* § 2000e-9 (granting to the EEOC the investigatory and subpoena powers of the National Labor Relations Board ("NLRB") by incorporating 29 U.S.C. § 161, which provides that the district courts have jurisdiction to determine the enforceability of an administrative subpoena). We have jurisdiction pursuant to 28 U.S.C. § 1291 because "an order of a District Court enforcing an administrative subpoena is final and ripe for review." *EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 445 (9th Cir. 1988).

## BACKGROUND

On November 27, 2004, Tyrone Merritt filed a charge of discrimination with the EEOC against FedEx on behalf of

himself and similarly situated African American and Latino employees. Merritt alleged that FedEx's Basic Skills Test, a cognitive ability test which Merritt was required to pass to be eligible for a promotion, had a statistically significant adverse impact on African American and Latino employees. Merritt also alleged that he had been personally denied promotion opportunities, unfairly disciplined, and denied compensation on account of his race.

Merritt, through counsel, requested a right-to-sue notice from the EEOC, which the EEOC issued to him on October 20, 2005. The EEOC, however, stated in that notice that it would continue to process Merritt's charge. On October 26, 2005, Merritt joined an already-pending class action against FedEx. *See Satchell v. Fed. Express*, No. 3:03-cv-0259 (N.D. Cal.). The *Satchell* action is limited geographically to FedEx's Western Region, an area encompassing eleven western states. FedEx employees outside that region are ineligible to join that action.

Pursuant to its continuing investigation, the EEOC issued an administrative subpoena to FedEx on February 10, 2006. The subpoena directed FedEx to identify basic information about the computer files that it maintains. The purpose of the information request was to aid the EEOC in fashioning a more detailed request if the need for more information should arise later in the investigation. The EEOC did not request any specific information about specific employees, nor did it request any employee files. The subpoena requested, in relevant part:

> Please identify any computerized or machine-readable files that are or have been maintained by you (or any other under contractual or other arrangement) since January 1, 2003 which contain data on personnel activities. This type of file would include, but not be limited to applicants, hiring, promotions, testing, discipline, job analyses and evaluations, performance evaluations, demotions, employment his-

tory, amounts of pay, adjustments to pay, work assignment, adjustments to work assignments, training, transfers, terminations, job status, and so forth.

FedEx refused to comply, filing a Petition to Revoke the Subpoena with the EEOC. The EEOC denied that petition. The EEOC then filed an action in district court to enforce its subpoena. FedEx argued that the EEOC is divested of investigatory authority once the party alleging the discriminatory practice initiates (or in this case joins) a private action. The district court rejected FedEx's argument and granted the EEOC's application to enforce the subpoena. Reasoning that "[t]he breadth of power granted the EEOC to investigate discrimination charges is such that validity of an administrative subpoena is not weakened unless the EEOC 'plainly lack[s]' jurisdiction," the district court concluded that there were "no defects in jurisdiction," and that "the evidence requested is relevant and material to the investigation." FedEx timely appealed.

Subsequently, FedEx filed a Notice of Mootness and Request for Dismissal of the appeal. FedEx represented that it had complied with an administrative subpoena relating to a charge filed by a different employee that is identical in every respect to the subpoena issued in this case, *i.e.*, it requested the same information as the Merritt subpoena. The EEOC opposes FedEx's request.[1]

## STANDARD OF REVIEW

The district court's order enforcing the EEOC's administrative subpoena is reviewed *de novo*. *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 443 (9th Cir. 1994); *see also In re Estate of Covington*, 450 F.3d 917, 919 n.4 (9th Cir. 2006).

---

[1]We postponed consideration of the mootness issue so that it could be considered together with our determination of the merits.

**ANALYSIS**

## I. Mootness

As a threshold matter, we consider FedEx's motion to dismiss this appeal on mootness grounds and conclude that this appeal is not moot. FedEx argues that the appeal is moot because it has fully complied with a subpoena in another proceeding, producing information to the EEOC that is "identical to the Merritt subpoena in every respect." Because of this production, FedEx argues further, "the EEOC now possesses all information sought by the Merritt subpoena."

**[1]** "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution." *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005). "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Id.* (internal quotation marks and citations omitted). In other words, "[t]he court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal." *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).

**[2]** Even assuming that this case might otherwise be moot, "[t]here are . . . four major exceptions to the mootness doctrine, for (1) collateral legal consequences; (2) wrongs capable of repetition yet evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class." *In re Burrell*, 415 F.3d at 998. The first three apply in this case.

**[3]** The collateral legal consequences exception applies because, although the primary injury may have passed (FedEx has now provided the sought-after information), there remains "a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 999 (emphasis omitted) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). If we were to agree with FedEx's legal argument that the EEOC lacks the authority to investigate a charge after the charging party initiates a private lawsuit, the EEOC's investigation would come to an end. If, on the other hand, we affirm the district court, the EEOC will be able to proceed with the Merritt investigation. If we demur from deciding the legal questions presented by this litigation, the EEOC's authority to continue its investigation based upon the Merritt charge would remain contested, and FedEx will be uncertain whether it needs to comply with future requests for information. Thus, a "collateral" injury survives that can be remedied by this court even though the primary injury may have been resolved. This conclusion is consistent with our cases that have held that complying with an administrative subpoena does not moot an appeal when "our decision affects numerous collateral circumstances." *FDIC v. Garner*, 126 F.3d 1138, 1142 (9th Cir. 1997); *see Mont. Sulphur*, 32 F.3d at 443 n.4 (holding that just because the subpoenaed party has "produced most and possibly all of the documents required by the subpoena," that "does not render the appeal moot, because our decision will still have collateral consequences"); *Alyeska Pipeline Serv. Co.*, 836 F.2d at 445 (holding that a subpoena appeal was not moot because reversal would result in documents being returned).

**[4]** The wrong capable of repetition, yet evading review "exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.' " *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 127 S. Ct. 2652, 2662 (2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). We have "applied the evading-review doctrine where the 'duration of the controversy is solely within the control of the defendant.' " *Anderson v. Evans*, 371 F.3d

475, 502 n.27 (9th Cir. 2004) (quoting *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002)). This exception is particularly apt in this case because FedEx can comply with the administrative subpoena requesting preliminary information based upon another charge, thus mooting this case, and then turn around and challenge the EEOC's next administrative subpoena based upon the Merritt charge, raising exactly the same legal arguments it raised in the district court and before us. And then FedEx can control the duration of that controversy by complying with the subpoena at a time of its choosing, and so on. Thus, "there is a reasonable expectation that the [EEOC] will be subject to the same action again." *Wis. Right to Life*, 127 S. Ct. at 2662 (internal quotations marks and citations omitted). Nothing about FedEx's compliance with the other subpoena ensures that the EEOC's next information request pursuant to the Merritt charge will not face the same challenge from FedEx. Thus, the capable of repetition yet evading review exception applies.

Nor will we dismiss a case as moot if the defendant voluntarily ceases the allegedly improper conduct, as FedEx has done, but where the defendant remains free to return to the challenged conduct at any time. As the Supreme Court put it:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be

expected to start up again lies with the party assert-ing mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks, citations, and brackets omitted); *accord Anderson*, 371 F.3d at 502 n.27.

**[5]** Here, FedEx has given no assurance that it will not challenge another administrative subpoena stemming from the Merritt charge; instead, it states only that

> since the EEOC has not made any additional requests and has not even identified any information it presumably lacks, FedEx has not objected to any such requests. Indeed, depending on the nature of any future [EEOC requests pursuant to the Merritt charge], FedEx may not object especially since it may have already provided the information in response to the [other] subpoenas.

Appellant's Notice of Mootness at 3. Given FedEx's own equivocal representations — "FedEx *may* not object" — it clearly has not met its "heavy burden of persuading the court" that "it [is] absolutely clear that the allegedly wrongful behav-ior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189.

**[6]** For each of these reasons, we conclude that this appeal is not moot and, therefore, deny FedEx's request for dismissal of the appeal.

## II.   Enforceability of the Administrative Subpoena

**[7]** Turning now to the merits, we must first decide whether the EEOC's subpoena power ceases when the EEOC issues a right-to-sue letter and the charging party initiates litigation based upon that charge. This question presents an issue of first impression in the Ninth Circuit. Our review of FedEx's

challenges to the EEOC's subpoena is limited. As we have explained:

> The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.

*EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (quoting *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), *as recognized by Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)). FedEx's challenge is grounded on factor (1) that the EEOC lacked the authority to investigate, and factor (3) that the evidence sought by the EEOC was not relevant and material to the investigation.

Regarding whether Congress has granted the authority to investigate, we have "emphasized the 'strictly limited' role of the district court when an agency subpoena is attacked for lack of jurisdiction." *Children's Hosp. Med. Ctr.*, 719 F.2d at 1430. "As long as the evidence is relevant, material and there is some 'plausible' ground for jurisdiction, or, to phrase it another way, unless jurisdiction is 'plainly lacking,' the court should enforce the subpoena." *Id.* (internal citations omitted). "[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *Id.* at 1429. The judicial inquiry is narrow because "judicial review of early phases of an administrative inquiry results in interference with the proper functioning of the agency and delays resolution of the ultimate question whether the Act was violated." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 n.38 (1984) (internal quotation marks, emendations, and citations omitted). Here, we con-

clude that the EEOC has at least a plausible basis for jurisdiction to issue an administrative subpoena even after Merritt filed his individual action.

Title VII of the Civil Rights Act of 1964, as amended, proscribes various employment practices involving discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2, 2000e-3. The EEOC bears the "[p]rimary responsibility for enforcing Title VII." *Shell Oil Co.*, 466 U.S. at 61-62 (citing 42 U.S.C. § 2000e-5(a)).

**[8]** "Title VII sets forth 'an integrated, multistep enforcement procedure' that enables the Commission to detect and remedy instances of discrimination." *Id.* (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977)). The EEOC's enforcement responsibilities are triggered by the filing of a charge of discrimination. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 190 (1990). A charge may be filed by an individual who alleges that he was discriminated against or by a Commissioner of the EEOC. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.7(a). A Commissioner may file a charge when a victim of discrimination is reluctant to file a charge for fear of employer retaliation, *see* 42 U.S.C. § 2000e-5(b); 29 C.F.R. §§ 1601.7(a), 1601.11 (2007), or when the Commissioner believes that an employer has engaged in a "pattern or practice of discrimination," 42 U.S.C. § 2000e-6(e), *see Shell Oil Co.*, 466 U.S. at 62.

**[9]** Once the charge is filed, "[t]he EEOC is then *required* to investigate the charge and determine whether there is reasonable cause to believe that it is true." *Occidental Life Ins. Co.*, 432 U.S. at 359 (emphasis added); *see also Univ. of Pa.*, 493 U.S. at 190 ("The Act *obligates* the Commission to investigate a charge of discrimination[.]" (emphasis added)); 42 U.S.C. § 2000e-5(b) (EEOC "shall make an investigation thereof"); 29 C.F.R. § 1601.15 ("The investigation of a charge *shall be made* by the Commission[.]" (emphasis added)). "To enable the Commission to make informed decisions at each

stage of the enforcement process, § 2000e-8(a) confers a broad right of access to relevant evidence[.]" *Univ. of Pa.*, 493 U.S. at 191. The EEOC "is entitled to inspect and copy 'any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation.' " *Shell Oil Co.*, 466 U.S. at 63 (quoting 42 U.S.C. § 2000e-8(a)). In acquiring such evidence, the EEOC may exercise all powers enjoyed by the NLRB under 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas. 42 U.S.C. § 2000e-9; *Shell Oil Co.*, 466 U.S. at 63; *accord Univ. of Pa.*, 493 U.S. at 191.

If the EEOC "determines after investigation that there is reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); *see also* 29 C.F.R. §§ 1601.20, 1601.24(a). If those efforts don't work, the EEOC may then bring a civil action against the employer, 42 U.S.C. § 2000-e5(f)(1); 29 C.F.R. § 1601.27, in which the charging party may intervene as a matter of right, 42 U.S.C. § 2000-e5(f)(1). If the EEOC fails to bring such an action, the individual employee may bring an action against the employer directly. *Id.* § 2000e-5(f)(1) (providing for issuance of a right-to-sue notice on dismissal of a charge or failure to resolve a charge by conciliation within 180 days). The right-to-sue notice may also be issued to the charging party upon request, 29 C.F.R. § 1601.28(a), or when the EEOC determines that there is reasonable cause to believe that Title VII has been violated, yet was unable to obtain voluntary compliance, but decides not to bring an action against the employer, *id.* § 1601.28(b). The EEOC may intervene in the charging party's lawsuit at the court's discretion. 42 U.S.C. § 2000e-5(f)(1).

Generally, when the EEOC issues a right-to-sue notice, it terminates its processing of the charge, but not always:

Issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge unless [an enumerated official of the Commision] determines at that time or at a later time that it would effectuate the purpose of title VII or the ADA to further process the charge.

29 C.F.R. § 1601.28(a)(3).

The EEOC has interpreted § 1601.28(a)(3) to mean that "further processing the charge" includes further investigation:

*Continue Processing After NRTS [Notice of Right to Sue] Is Issued* — Continue processing the charge after issuing the NRTS whenever a cause LOD has been issued and as follows:

. . . .

(e) *To Otherwise Effectuate the Purposes of Title VII/ADA* — Ordinarily continue investigating when the charge covers persons other than the requestor or involves an acknowledged/documented respondent policy or possible pattern of discrimination affecting others; or when the DD otherwise determines that continued action would effectuate the purposes of Title VII/ADA.

1 EEOC Compliance Manual § 6.4 (June 2006), *available at* 2006 WL 4672976.[2]

---

[2]The EEOC's interpretation of its own regulation "is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.' " *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *accord Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1154 (2008); *Miller v. Cal. Speedway Corp.*, 2008 WL 3169130, at *11 (9th Cir. Aug. 8, 2008). The EEOC's interpretation that "further processing the charge" includes further investigation is neither plainly erroneous nor inconsistent with the regulation.

**[10]** Thus, we read Title VII, the relevant regulations, and the EEOC's interpretation of those regulations to mean that: (1) the EEOC's investigative mandate is triggered by the filing of a valid charge; (2) the EEOC may bring its own action or may issue a right-to-sue notice to the charging party; and (3) even though the EEOC normally terminates the processing of the charge when it issues the right-to-sue notice, it can, under limited circumstances, continue to investigate the allegations in the charge, which includes the authority to subpoena information relevant to that charge. Here, Merritt filed a charge alleging personal discrimination and discrimination against other similarly situated African Americans and Latinos. The EEOC, pursuant to Merritt's request, issued to him a right-to-sue notice. The EEOC decided, however, to continue investigating Merritt's charge because it involved a possible policy or pattern of discrimination affecting others. We have found nothing to suggest that the EEOC exceeded its authority in doing so.

**[11]** Thus, we conclude that the EEOC did not "plainly lack" the authority to issue the subpoena. *See Children's Hosp. Med. Ctr.*, 719 F.2d at 1430. Because there is, at the very least, a "plausible ground for jurisdiction," the district court did not err in enforcing the subpoena. *See id.*

The Fifth Circuit is the only other circuit to have addressed the question of whether the EEOC's authority to issue an administrative subpoena ceases when the charging party files suit. *See EEOC v. Hearst Corp.*, 103 F.3d 462 (5th Cir. 1997). The Fifth Circuit concluded that "in a case where the charging party has requested and received a right to sue notice and is engaged in a civil action that is based upon the conduct alleged in the charge filed with the EEOC, *that charge* no longer provides a basis for EEOC investigation." *Id.* at 469-70 (emphasis in the original). For the reasons we discuss below, we cannot agree with the Fifth Circuit.

*Hearst* reasoned that Title VII's multistep enforcement procedure, which according to the *Hearst* court is "divided into four distinct stages: filing and notice of charge, investigation, conference and conciliation, and finally, enforcement," means that once an action is brought based upon a charge, the time for investigation has passed, and thus, the EEOC is divested of subpoena authority. *Id.* at 468-69. As the Fifth Circuit saw it, "once formal litigation is commenced," the purposes of Title VII are no longer furthered by the EEOC's continued investigation of the charge and, for that reason, the investigatory authority ceases once the charging party files suit. *Id.* For a number of reasons, we cannot agree that the agency "plainly lacks" the authority to issue an administrative subpoena after the charging party files suit.[3]

---

[3]We note that *Hearst* did not review the administrative subpoena under the deferential standard that our decision in *Children's Hospital* requires. *Compare Hearst*, 103 F.3d at 464 (noting that the EEOC cited our decision in *Children's Hospital*, but implicitly rejecting our approach), *with Children's Hosp. Med. Ctr.*, 719 F.2d at 1430 (holding that an administrative subpoena is to be enforced unless jurisdiction is "plainly lacking"). We believe that it is well-established that an administrative subpoena is to be enforced unless agency authority is plainly lacking. *See, e.g.*, *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) ("The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration."); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001) (reaffirming holding that "enforcement of an agency's investigatory subpoena will be denied only when there is 'a patent lack of jurisdiction' in an agency to regulate or to investigate"); *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5-6 (1st Cir. 1996) ("We have repeatedly admonished that questions concerning the scope of an agency's substantive authority to regulate are not to be resolved in subpoena enforcement proceedings. . . . As long as the agency's assertion of authority is not apocrypha, a procedurally sound subpoena must be enforced."); *Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir.1982) ("It is well-settled that a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute."). *Hearst* ignored that body of law.

First, the steps in the EEOC's "multistep" enforcement procedure are not "distinct," as the *Hearst* court characterized it. The fact that one stage of the enforcement procedure is going on does not mean that another stage has ceased. The Supreme Court has described the multistep enforcement procedure as an "integrated" procedure "that enables the Commission to detect and remedy instances of discrimination." *Shell Oil Co.*, 466 U.S. at 62. The investigation need not end simply because the EEOC is trying to remedy the discrimination through conference and conciliation. As the Supreme Court put it, "[t]o enable the Commission to make informed decisions *at each stage* of the enforcement process, § 2000e-8(a) confers a *broad right* of access to relevant evidence[.]" *Univ. of Pa.*, 493 U.S. at 191 (emphases added). Thus, the beginning of another stage does not necessarily terminate the preceding stage, and Title VII confers upon the EEOC investigatory authority during *each* stage.

We also disagree with *Hearst*'s notion that the charging party can, through his or her actions (that is, by filing suit), divest the EEOC of authority. As the Supreme Court recognized, the EEOC controls the charge regardless of what the charging party decides to do. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) ("[O]nce a charge is filed, . . . under the—statute the EEOC is in command of the process."); *cf. id.* at 297 ("We have recognized several situations in which the EEOC does not stand in the employee's shoes.").

In *Waffle House*, the Court was faced with deciding "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the [EEOC] from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action[.]" *Id.* at 282. The Supreme Court concluded that the employee's arbitration agreement did not hinder the EEOC's ability to prosecute the charge, reasoning that:

> [T]he EEOC takes the position that it may pursue a claim on the employee's behalf even after the

> employee has disavowed any desire to seek relief. The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.

*Id.* at 291-92. We have echoed the view that the EEOC, and not the charging party, is the master of the case. *See EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987) ("The EEOC's right of action is independent of the employee's private action rights.").

We further disagree with *Hearst*'s conclusion that Title VII's purposes are no longer served by a continuing investigation after the charging party has filed suit. The EEOC's investigatory authority serves a greater purpose than just investigating a charge on behalf of an individual. *See Waffle House*, 534 U.S. at 287. That is, "[t]he EEOC is not merely a proxy for victims of discrimination, but acts also to vindicate the public interest in preventing employment discrimination." *See Goodyear Aerospace Corp.*, 813 F.2d at 1542 (internal quotation marks omitted). The individual, of course, is guided by a desire to remedy his or her own discriminatory treatment, whereas the EEOC "is guided by the overriding public interest in equal employment opportunity asserted through direct Federal enforcement." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980) (internal quotation marks and ellipses omitted). By continuing to investigate a charge of systemic discrimination even after the charging party has filed suit, the EEOC is pursuing its obligation to serve the public interest. Indeed, *Hearst* failed even to consider 29 C.F.R. § 1601.28(a)(3), which makes clear that the EEOC has con-

cluded that a continuing investigation can further the public interest, even after the charging party has filed suit. *Compare Hearst*, 103 F.3d at 462-70 (failing to discuss or cite 29 C.F.R. § 1601.28(a)(3)), *with* 29 C.F.R. § 1601.28(a)(3) (authorizing the continuing processing of a charge, even after the charging party has filed suit, when "it would effectuate the purpose of title VII").

Finally, with respect to the *Hearst* decision, *Hearst* held that the EEOC was divested of authority even though nothing in § 706(f)(1) of Title VII indicates that the EEOC's investigatory powers over a charge cease when the charging party files a private action. *See* 42 U.S.C. § 2000e-5(f)(1). As the Supreme Court has concluded, "[a]bsent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed" to the continuing investigation of a charge.[4] *Waf-*

---

[4]We also note that the *Hearst* court's conclusion was clearly motivated by a desire to impose time limits on EEOC authority. *See Hearst*, 103 F.3d at 468 ("[M]any cases pend for years in 'administrative limbo' with the EEOC, as information grows stale and memories fade. . . . Finality is apparently not a word in the EEOC lexicon."). The *Hearst* court lamented that § 2000e-5(f)'s provision which provides that "[after 180 days] the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought . . . (A) by [any charging parties] or (B) by [persons aggrieved by a practice challenged in a Commissioner's charge]," imposed no time limits on EEOC authority. *Id.* at 466-67. To that court, "the purpose of the notice at the end of the 180-day period primarily must be to signify the end of agency action with respect to the charge." *Id.* at 467. *Hearst* recognized, however, that "[i]f Title VII were interpreted as [it] believe[d] the text demands, [it] logically could conclude only that the EEOC's investigation of a charge must also end, absent some extenuating circumstance peculiar to the case under investigation that invokes principles of equity, after the 180-day period passed—irrespective of whether the charging party elected to sue," but, as the *Hearst* court noted, the Supreme Court had already decided differently. *Id.* at 467-68 (citing *Occidental Life Ins. Co.*, 432 U.S. at 366). Undeterred, the Fifth Circuit reasoned that the "case before [it was] not controlled by *Occidental*." *Id.* at 469. Thus, the *Hearst* court could still conclude that "the time for investigation ha[d] passed." *Id.* By holding that

*fle House*, 534 U.S. at 291-92; *cf. Occidental Life Ins. Co.*, 432 U.S. at 361 ("Nothing in § 706(f)(1) indicates that EEOC enforcement powers cease if the complainant decides to leave the case in the hands of the EEOC rather than to pursue a private action.").

For the foregoing reasons, we decline to adopt *Hearst*'s rationale as the law of this Circuit, preferring instead a straightforward reading of Title VII and the relevant regulations.

Finally, we note that FedEx makes a series of arguments, all of which boil down to this: Title VII prohibits the EEOC from initiating a lawsuit based upon a charge after the charging party files suit, and therefore the EEOC lacks the authority to continue investigating a charge with respect to which it no longer has the authority to bring an action. As should be clear from our preceding discussion, FedEx's contention that Title VII prohibits the EEOC from initiating an EEOC action based upon Merritt's charge once Merritt has filed his action is, at best, a dubious statement of the law. *See Waffle House,* 534 U.S. at 297 ("We have recognized several situations in which the EEOC does not stand in the employee's shoes."); *Goodyear Aerospace*, 813 F.2d at 1542 ("The EEOC's right of action is independent of the employee's private action rights.").

---

the EEOC's investigatory authority terminates after a charging party files suit, the Fifth Circuit sought to accomplish what the Supreme Court rejected in *Occidental Life*—the imposition of a time limit on the EEOC's authority over a charge. *See Hearst*, 103 F.3d at 468-69. We are not persuaded by this approach—a lower court should examine a case in light of the reasoning as well as the narrowest possible holding of a Supreme Court decision. *See Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("We hold that the issues decided by the higher court need not be identical in order to be controlling.").

**[12]** Nevertheless, we need not decide whether the EEOC has the authority to bring such a lawsuit. That question should be decided in a case where the EEOC actually brings a duplicative lawsuit, not in an action to enforce an administrative subpoena. *See Karuk Tribe Hous. Auth.*, 260 F.3d at 1077-78 (noting that when we review an administrative subpoena we will "decline[ ] to resolve . . . potential defenses to enforcement actions"); *Children's Hosp. Med. Ctr.*, 719 F.2d at 1429 ("[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it."). For example, in *Children's Hospital*, we concluded that "whether res judicata might bar a subsequent lawsuit was simply irrelevant to the inquiry whether the EEOC could issue administrative subpoenas . . . ." *See Karuk Tribe Hous. Auth.*, 260 F.3d at 1076 (discussing *Children's Hosp.*, 719 F.2d at 1429). Here, we conclude that whether the EEOC may be barred from bringing a subsequent lawsuit based upon the Merritt charge is simply irrelevant to whether the EEOC could issue an administrative subpoena based upon that charge.

For all of these reasons, we hold that the EEOC retains the authority to issue an administrative subpoena against an employer even after the charging party has been issued a right-to-sue notice and instituted a private action based upon that charge.

### III.　Does the subpoena seek relevant information

Next, FedEx contends that the subpoena seeks irrelevant information and is overbroad.

### A.　Relevant information

**[13]** "[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *Id.* at 1076 (internal quotation marks and citations omitted);

*accord Children's Hosp. Med. Ctr.*, 719 F.2d at 1428. Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance. *See Children's Hosp. Med Ctr.*, 719 F.2d at 1428 ("[T]he evidence [must be] relevant and material *to the investigation*." (emphasis added)). Moreover, the relevancy requirement is "not especially constraining." *Shell Oil Co.*, 466 U.S. at 68. The term "relevant" is "generously construed" to "afford[ ] the Commission access to virtually any material that might cast light on the allegations against the employer." *Id.* at 68-69.

The subpoena in this case asks FedEx only to identify any computerized files that it has or currently maintains. FedEx, the district court, and the EEOC all agree that that information is not necessarily relevant in an evidentiary sense. That is, the information sought is not itself evidence of discriminatory treatment in violation of Title VII. Rather, the information will help the EEOC craft additional information requests that may produce evidence of discriminatory treatment.

The Fourth Circuit has addressed this issue in a case involving very similar facts, holding that the evidence sought was relevant:

> [I]dentification of the computerized personnel information . . . is directly relevant to its investigation . . . .
>
> Such data permits the Commission to better focus its investigation. [T]his information will enable the EEOC to perform its investigative function by allowing it to frame more specific requests which will limit the possibility that irrelevant or unnecessary material will be produced for the EEOC to review. The efficient search for relevant information is imperative in a case like this, where the Commission must investigate not one or two claims against the company, but nearly two dozen. Without this means

of locating pertinent data, both the EEOC and the employer could be overwhelmed by the sheer quantity of information needed to address each claim treated individually.

*EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 114 (4th Cir. 1997) (internal quotation marks omitted). We agree with and adopt the Fourth Circuit's analysis.

**[14]** The EEOC's need to focus the investigation is even more pressing in this case. In *Lockheed Martin*, the EEOC was investigating "nearly two dozen claims," whereas here, the EEOC is investigating a charge that alleges systemic discrimination affecting African American and Latino employees in FedEx's eleven-state Western region. "In sum, in asking [FedEx] to identify what computerized personnel files it had maintained, the EEOC subpoenaed relevant information, i.e., information that affords it an opportunity to determine what material 'might cast light on the allegations against the employer.' " *Lockheed Martin Corp.*, 116 F.3d at 114 (quoting *Shell Oil Co.*, 466 U.S. at 69). Thus, the subpoena seeks information "relevant and material *to the investigation*." *See Children's Hosp. Med. Ctr.*, 719 F.2d at 1428 (emphasis added).

## B.   Overbroad

Finally, FedEx makes two distinct arguments that the subpoena is overbroad. First, FedEx argues that the subpoena is overbroad because the EEOC "demand[s] personnel information concerning applicants, hiring, job analyses, evaluations, demotions, training, and terminations, [that] ha[ve] no relevance to the specific claims of discrimination asserted in the charges." This argument simply rehashes the relevancy argument that we have already rejected. The subpoena need not request only evidence that is specifically relevant to proving discrimination; the requested information need only be "relevant and material *to the investigation*." *Id*.

**[15]** Next, FedEx argues that the subpoena is overbroad as to the requested class information because "[w]hen there is an individual charge, a district court should decline a company-wide subpoena if the EEOC has not offered evidence of the relevancy of the company-wide data." We disagree. Merritt's charge, although brought by an individual, alleges a pattern and practice of racial discrimination. Because it raises the specter of systemic discrimination, the EEOC has the authority to investigate charges of discrimination beyond the alleged individual discrimination specifically committed against Merritt. The district court should not "decline" to enforce such a subpoena. To the contrary, it should enforce it as the EEOC plainly has jurisdiction to seek company-wide data.

The EEOC, by requesting identification of computerized files instead of the files themselves, has refrained from imposing on FedEx an overbroad request. Because the charge allegations are so broad, the EEOC has demonstrated restraint by requesting identification of the computerized files and not the files themselves. The information sought by the EEOC will afford it the opportunity to make sure that it doesn't request vastly more information than it needs. As the EEOC correctly points out, "the subpoena is designed to solicit information from FedEx that will enable the EEOC to draft a future request for employee documents that will *not* be overly broad." The subpoena is not overbroad.

### CONCLUSION

To enable the EEOC to make informed decisions at each stage of the enforcement process, Congress has conferred upon it a broad right of access to relevant evidence. Given this broad grant of power, it can hardly be said that the EEOC plainly lacks jurisdiction. Because Congress granted the EEOC the authority to investigate (and nothing in Title VII divests the EEOC of that authority when a charging party files suit) and because the evidence requested by the EEOC is relevant and material to the investigation, the district court did not

err in enforcing the EEOC's administrative subpoena. The judgment of the district court is

**AFFIRMED**.